# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| JOSEPH NEMCHIK and BRADLEY NEMCHIK<br><br>PLAINTIFFS,<br><br>v.<br><br>DENNIS LEMMA, SEMINOLE COUNTY SHERIFF, in his Official Capacity; DEPUTY ERIK ARAGON-VELA, DEPUTY SCOT VANDERWEIDE, in their Individual Capacities,<br><br>DEFENDANTS. | **CASE NO.**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs JOSEPH NEMCHIK ("MR. NEMCHIK, J.") and

BRADLEY NEMCHIK ("MR. NEMCHIK, B."), collectively, ("PLAINTIFFS"),

through undersigned counsel, sues jointly and severally DENNIS LEMMA

("SHERIFF LEMMA"), in his official capacity as Seminole County Sheriff, and

Deputies ERIK ARAGON-VELA ("DEPUTY ARAGON-VELA"), SCOT

VANDERWEIDE ("DEPUTY VANDERWEIDE"), in their individual capacities;

collectively, ("DEFENDANTS") and allege as follows:

1

1.      This is a civil rights action arising from egregious and unreasonable acts of police misconduct and excessive force committed by DEPUTY ARAGON-VELA, DEPUTY VANDERWEIDE, and the Seminole County Sherriff's Department ("SCSD").

2.      Plaintiff, MR. NEMCHIK, J., the father of plaintiff MR. NEMCHIK, B., is a 61-year-old white male and seeks relief for DEFENDANTS violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 1988; and the Fourth Amendment of the United States Constitution, and for the rights secured under the laws and Constitution of the State of Florida.

3.      Plaintiff, MR. NEMCHIK, B. is a 31-year-old white male, the son of Plaintiff MR. NEMCHIK, J., and seeks relief for DEFENDANTS violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 1988; and the Fourth Amendment of the United States Constitution, and for the rights secured under the laws and Constitution of the State of Florida.

4.      PLAINTIFFS seek compensation for the unconstitutional and tortious conduct of DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE, who wrongfully detained, arrested and used excessive force against them.

5.      This action makes issue and alleges violations of the United States Constitution including, but not limited to a violation of the Fourth Amendment, which makes illegal the unlawful arrest of persons without probable cause and

the unnecessary and excessive use of force against persons during their arrest.

6.      This Honorable Court has original jurisdiction over this action and the parties named herein pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988; the United States Constitution; the provisions in 28 U.S.C. §§1331 and 1343, et seq.; and the ancillary jurisdiction of this Court pursuant to 29 U.S.C § 1367 for all state law claims.

7.      PLAINTIFFS further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) in that all acts, omissions and practices described hereafter, giving rise to these claims all occurred in Seminole County, Florida, and within the jurisdiction of the United States District Court in and for the Middle District of Florida.

9.      PLAINTIFFS claim for relief is predicated upon 42 U.S.C § 1983 and upon 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to a prevailing party in actions brought pursuant to 42 U.S.C. § 1983.

10.     PLAINTIFFS claim for relief is also predicated upon State law for all claims arising from violations of State statutes and common law.

11.     At all times material hereto, the acts, omissions, practices and other conduct of each defendant were committed under color of state or local law.

12.     At all times material hereto, the acts, omissions, practices and other

conduct of DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE were committed within the course and scope of their employment for Defendant SHERIFF LEMMA.

## NOTICE OF CLAIM

13.     PLAINTIFFS, in furtherance of their state law causes of action, filed a timely Notice of Claim in accordance with Florida Statute § 768.28 against SCSD on or about December 16, 2019, and no action was taken on the claim within six months after it was filed.

14.     PLAINTIFFS also filed Citizen Complaints with SCSD on or about February 27, 2019.

## PARTIES

15.     At all times material hereto, PLAINTIFFS, were and currently are citizens of the United States, and at all times hereto, PLAINTIFFS were and currently are citizens of Seminole County, Florida. PLAINTIFFS have retained the services of undersigned counsel and are obligated to pay a reasonable attorney's fee for such services in pursuing the claim.

16.     At all times material hereto, Defendant SHERIFF LEMMA was and is a "person" subject to suit under 42 U.S.C. § 1983. Defendant SHERIFF LEMMA was and is the elected sheriff for the SCSD in Seminole County, Florida, and was at all times material hereto, acting in his official capacity. He was responsible for,

inter alia, the policies, procedures, and customs of the SCSD as the final policymaker. He was also responsible for training and supervising his deputies. Defendant SHERIFF LEMMA, through his deputies, employees and agents, was responsible for the proper and efficient enforcement of the laws regulations, policies, practices, and procedures of such political entity; the laws and regulations of the State of Florida; and the Constitution of the United States. At all times hereto, his agents, employees, and/or servants were acting within the course and scope of their agency, apparent agency, employment, and under color of law. He is sued in his official capacity.

17.     At all times material hereto, Defendants DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE, were sheriff deputies with SCSD, under the supervision of Defendant SHERIFF LEMMA, acting within the course and scope of his employment and under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida and/or Seminole County, Florida. They are sued in their individual capacity.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

18.     On March 4, 2018, DEFENDANTS unlawfully detained and arrested PLAINTIFFS in violation of their Fourth Amendment constitutional right, and subsequently used unlawful and egregious force when making the unlawful arrests.

19.    On March 4, 2018, PLAINTIFFS were at Wekiva Island, a Florida corporation, located in Seminole County, FL.

20.    PLAINTIFFS were celebrating the birthdays of a family member, ANDREW NEMCHICK ("MR. NEMCHIK, A."), and a family friend, JACK MARTIN ("MR. MARTIN").

21.    There were approximately ten people in the party celebrating MR. NEMCHICK, A. and MR. MARTIN's birthday.

22.    While celebrating, and shortly after arriving at Wekiva Island, a Wekiva Island Manager, ALEC WOOD ("THE MANAGER"), asked a member of the PLAINTIFFS' party, MR. MARTIN, to leave the premises.

23.    MR. MARTIN, PLAINTIFFS, and the rest of the party were confused about why MR. MARTIN had to leave.

24.    Nonetheless, PLAINTIFFS and their party began to gather their belongings in order to leave the Wekiva Island premises.

25.    THE MANAGER called law enforcement to request assistance in removing MR. MARTIN from the premises and asked them to write a trespass notice against MR. MARTIN warning him not to return to Wekiva Island premises.

26.    SCSD Deputies are commonly called on to assist with property owners and businesses to issue warnings against trespassers.

27.    It is clearly established law that an officer does not have the legal authority

to conduct an investigatory stop or arrest for trespass unless the owner or his agent has first warned the individual.[1]

28.      It is clearly established law that a stop for the purpose of issuing a trespass warning is considered a consensual encounter, and an officer may not detain an individual for the purpose of issuing a written trespass warning absent a reasonable suspicion the individual has committed or is about to commit a crime.

29.      It is clearly established law that in order to cite an individual for a violation of Florida Statute § 810.08(2)(A) "Trespass In Structure Or Conveyance," an owner or their agent must first warn or give notice to the potential trespasser.

30.      SCSD deputies, DEPUTY ARAGON-VELA and DEPUTY DANIELLE CASSADY (DEPUTY CASSADY), arrived at the Wekiva Island premises, and after speaking with THE MANAGER, walked over to MR. MARTIN and the other members of the party while they were gathering their belongings.

31.      While DEPUTY ARAGON-VELA and DEPUTY CASSADY were speaking with MR. MARTIN, THE MANAGER alerted them that he would also like MR. NEMCHIK, J. removed and given a trespass notice to not return to Wekiva

---

[1] *Henning v. Walmart Stores Inc.*, 738 F. App'x. 992, 997 (11th Cir. 2018) (citing *Moore v. State*, 200 So. 3d 1290, 1292 (Fla. 2d DCA 2016)).

Island premises.

32.     After MR. MARTIN and MR. NEMCHIK, J. packed their belongings and while they were walking to the parking lot to get in their vehicles and leave the premises, DEPUTY ARAGON-VELA and DEPUTY CASSADY told MR. MARTIN and MR. NEMCHIK, J. that they were going to receive a trespass notice to not return to Wekiva Island premises.

33.     Without reasonable suspicion that they were violating or about to violate a criminal statute, DEPUTY ARAGON-VELA ordered MR. MARTIN and MR. NEMCHIK, J. to stop and identify themselves.

34.     MR. NEMCHIK, J. did not want to stop and identify himself, but felt obligated to do so given the deputies aggressive and authoritative interaction with him.

35.     When MR. NEMCHIK, J. questioned the legal authority the deputies had to order him to identify himself, DEPUTY ARAGON-VELA became further enraged.

36.     One of the deputies, either DEPUTY ARAGON-VELA or DEPUTY CASSADY, asked Mr. NEMCHIK, B. to get the other members of the party to wait at their cars while they finished writing a trespass notice for MR. MARTIN and MR. NEMCHIK, J.

37.     MR. NEMCHIK, B. complied and asked the other members of the party to

8

go to their cars and wait until the deputies finished citing MR. MARTIN and MR. NEMCHIK, J.

38.     While in the parking lot, more SCSD deputies arrived, including DEPUTY VANDERWEIDE and DEPUTY WILLIAM MORRIS (DEPUTY MORRIS).

39.     After getting briefed on the situation by DEPUTY ARAGON-VELA, DEPUTY VANDERWEIDE immediately turned his attention to MR. NEMCHIK, J., and after engaging in a brief conversation with MR. NEMCHIK J., grabbed him by the arm and threw him against the hood of his car and attempted to place him under arrest.

40.     While MR. NEMCHIK, B. and the rest of the party were walking to their cars, MR. NEMCHIK, B. saw DEPUTY VANDERWEIDE throwing his father, MR. NEMCHIK, J. against the patrol unit and out of fear for his father's safety went over to stop DEPUTY VANDERWEIDE from physically assaulting his father any further.

41.     Immediately upon MR. NEMCHIK, B. getting between DEPUTY VANDERWEIDE and MR. NEMCHIK J. to prevent further harm to his father, DEPUTY VANDERWEIDE grabbed MR. NEMCHIK, B. and attempted to pull him to the ground. After unsuccessfully attempting to pull MR. NEMCHIK, B. to the ground, DEPUTY VANDERWEIDE grabbed MR. NEMCHIK, B. by the throat with his left hand, subsequently grabbed him by his hair with the same hand,

and then pulled his taser out with his right hand while pressing the taser against MR. NEMCHIK, B.'s chest and shoulder.

42.     After DEPUTY VANDERWEIDE pressed the taser into Mr. NEMCHIK, B's chest and shoulder, MR. NEMCHIK, B. kneeled on both knees. DEPUTY VANDERWEDIE subsequently arrested him.

43.     During the altercation between DEPUTY VANDERWEIDE and MR. NEMCHIK, B., DEPUTY ARAGON-VELA also attempted to place MR. NEMCHIK, J. under arrest. Without giving him any indication for why he was arresting him, DEPUTY ARAGON-VELA continued to grab and pull at MR. NEMCHIK, J.'s arm and eventually arrested him.

44.     DEPUTY ARAGON-VELA placed handcuffs on MR. NEMCHIK, J. so tightly that Mr. NEMCHIK, J. hands and fingers went numb and had to ask DEPUTY ARAGON-VELA to loosen them.

45.     DEPUTY ARAGON-VELA instead tightened the handcuffs even more on MR. NEMCHIK, J. and laughed at him after he did so.

46.     DEPUTY ARAGON-VELA arrested and charged MR. NEMCHIK, J. with Florida § 843.02 "Resisting Officer Without Violence," Fl. Stat. § 810.08(2)(A) "Trespass In Structure Or Conveyance," and Fl. Stat. § 856.011 "Disorderly Intoxication."

47.     On August 15, 2019, The State of Florida prosecutor's office dismissed each

of these charges after presenting them to the court and ultimately realizing they were meritless.

48.      DEPUTY VANDERWEIDE arrested and charged MR. NEMCHIK, B. with Florida § 843.02 "Resisting Officer Without Violence," and Florida § 784.07(2)(B) "Battery Upon A Law Enforcement Officer."

49.      On November 13, 2019, at a jury trial, MR. NEMCHIK, B. was found Not Guilty and acquitted on all charges.

50.      SHERIFF LEMMA and SCSD did not train DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE on their legal authorities when issuing a trespass warning.

51.      Proper training on the legal authorities' deputies have when issuing a trespass warning would consist of instruction on the clearly established laws stated in factual allegations "30" through "32."

52.      SHERIFF LEMMA and SCSD also did not train DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE on de-escalation when there is an alleged non-violent offense.

53.      Proper training on de-escalation when there is an alleged non-violent offense would consist of training deputies to only physically engage citizens with force as a last resort.

54.      SHERIFF LEMMA and SCSD also do not post their policies, trainings, and

procedures for the public to access.

55.    PLAINTIFFS filed Citizen Complaints with SCSD on or about February 27,

2019 complaining of the unlawful arrest and excessive force by DEPUTY

ARAGON-VELA nor DEPUTY VANDERWEIDE.

56.    PLAINTIFFS citizen complaints were not seriously investigated or

adjudicated.

57.    SHERIFF LEMMA and SCSD wrote in their response to PLAINTIFFS

citizen complaints that the deputies were justified in their actions.

58.    SHERIFF LEMMA and SCSD held neither DEPUTY ARAGON-VELA nor

DEPUTY VANDERWEIDE accountable for their actions.

59.    In addition to PLAINTIFFS bodily injuries, pain and suffering, mental

anguish, loss of ability to enjoy life, and other injuries and losses, MR.

NEMCHIK, J.'s employer had to rescind a significant promotion after his

unlawful arrest due to his inability to pass a government security clearance with

pending charges.

### COUNT I: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (PLAINTIFFS FALSE ARREST AND IMPRISONMENT CLAIM AGAINST SHERIFF DENNIS LEMMA IN HIS OFFICIAL CAPACITY)

60.    PLAINTIFFS repeat and re-allege each and every allegation set forth above

in paragraphs "1" through "59" inclusive with the same force and effect as if

more fully set forth at length herein.

61.     At all times material hereto, SHERIFF LEMMA, in his official capacity, was responsible for the training, policies, and procedures implemented within SCSD.

62.     SHERIFF LEMMA maintained a deliberate indifference to unlawful detainments and arrest committed by his deputies at SCSD, specifically as it concerns the offense of trespassing.

63.     SHERIFF LEMMA knew that deputies would be confronted with daily calls from businesses and individuals requesting assistance with removing persons off of their property and issuing those persons trespass warnings, but SHERIFF LEMMA did not properly train deputies on the legal authority deputies had in these instances.

64.     SHERIFF LEMMA knew that there was a high likelihood that trespassing calls would cause confusion among his deputies and made a deliberate choice not to train his deputies in the appropriate way to respond to calls requesting assistance with removing persons off property and administering trespass notices.

65.     Specifically, SHERIFF LEMMA knew that SCSD deputies needed training on whether they could detain a person while attempting to write a trespass notice against the person.

66.     Due to the amount of calls deputies receive for assistance in trespassing cases and the clearly established law, the need for training was so obvious, and

the inadequacy of training so likely to result in the violation of constitutional rights, that SHERIFF LEMMA's failure to train was deliberately indifferent even without evidence of prior constitutional violations by his deputies.

67.     As a direct, proximate and foreseeable result of SHERIFF LEMMA's failure to train DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE, PLAINTIFFS have suffered bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, costs and expenses of litigation, and other injuries and losses.  These injuries and losses are permanent and continuing, and PLAINTIFF will suffer such losses in the future.

68.     WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

a.     Judgement for compensatory damages against SHERIFF LEMMA;

b.     Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

c.     A trial by jury on all issues so triable; and

d.     Such other and further relief this Court may deem just, proper, and appropriate.

## <u>COUNT II: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983</u> <u>(PLAINTIFFS FALSE ARREST AND IMPRISONMENT CLAIM AGAINST</u> <u>DEPUTY ARAGON-VELA AND DEPUTY VANDERWEIDE IN THEIR</u> <u>INDIVIDUAL CAPACITY)</u>

69.     PLAINTIFF repeats and re-alleges each and every allegation set forth

above in paragraphs "1" through "59" inclusive with the same force and effect as

if more fully set forth at length herein.

70.     At all times material hereto, DEPUTY ARAGON-VELA and DEPUTY

VANDERWEIDE had a legal duty not to seize or arrest citizens without probable

cause.

71.     DEPUTY ARAGON-VELA falsely arrested and imprisoned MR.

NEMCHIK, J., when in fact, he had committed no crime, nor broken any law and

said detention, arrest and imprisonment was without probable cause.

72.     DEPUTY VANDERWEIDE falsely arrested and imprisoned MR.

NEMCHIK, B., when in fact, he had committed no crime, nor broken any law

and said detention, arrest and imprisonment was without probable cause.

73.     As a direct, proximate and foreseeable result of DEPUTY ARAGON-

VELA and DEPUTY VANDERWEIDE's actions, PLAINTIFFS have suffered

bodily injuries and resulting pain and suffering, mental anguish, loss of ability to

enjoy life, costs and expenses of litigation, and other injuries and losses. These

injuries and losses are permanent and continuing, and PLAINTIFFS will suffer

such losses in the future.

74.     WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

a.      Judgement for compensatory damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE;

b.      Judgement for punitive damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE;

c.      Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

d.      Judgement for pre-judgment interest on all economic losses; and pre-judgment interest on attorney's fees for delay in payment;

e.      A trial by jury on all issues so triable; and

f.      Such other and further relief this Court may deem just, proper, and appropriate.

## COUNT III: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (PLAINTIFFS EXCESSIVE FORCE CLAIM AGAINST SHERIFF LEMMA, IN HIS OFFICIAL CAPACITY)

75.    PLAINTIFFS repeat and re-allege each and every allegation set forth above in paragraphs "1" through "59" inclusive with the same force and effect as if more fully set forth at length herein.

76.     At all times material hereto, SHERIFF LEMMA, in his official capacity, was responsible for the training, policies, and procedures implemented within SCSD.

77.    SHERIFF LEMMA maintained a deliberate indifference to unlawful and excessive force committed by his deputies at SCSD, specifically as it pertains to detainments and arrests for alleged nonviolent offenses.

78.    Specifically, SHERIFF LEMMA knew that SCSD deputies needed training on deescalating citizen interactions specifically when police have no reasonable suspicion to detain or no probable cause to arrest.

79.    SHERIFF LEMMA knew that deputies would have daily interactions with citizens in situations where they had no reasonable suspicion to detain and no probable cause to arrest, but SHERIFF LEMMA failed to properly train deputies on how to deescalate those situations and avoid using excessive force.

80.    Due to the amount of times officers incur instances in where there is no reasonable suspicion to detain, no probable cause to arrest, and only allegations

of a non-violent offense, the need for training was so obvious, and the inadequacy of training so likely to result in the violation of constitutional rights, that SHERIFF LEMMA's failure to train was deliberately indifferent even without evidence of prior constitutional violations by his deputies.

81.     As a direct, proximate and foreseeable result of SHERIFF LEMMA's failure to train DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE, PLAINTIFFS have suffered bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, costs and expenses of litigation, and other injuries and losses.  These injuries and losses are permanent and continuing, and PLAINTIFFS will suffer such losses in the future.

82.     WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

a.     Judgement for compensatory damages against SHERIFF LEMMA;

b.     Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

c.     A trial by jury on all issues so triable; and

d.     Such other and further relief this Court may deem just, proper, and appropriate.

## COUNT IV: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (PLAINTIFFS EXCESSIVE FORCE CLAIM AGAINST DEPUTY ARAGON-VELA AND DEPUTY VANDERWEIDE, IN THEIR INDIVIDUAL CAPACITY)

83.     PLAINTIFFS repeat and re-allege each and every allegation set forth above in paragraphs "1" through "59" inclusive with the same force and effect as if more fully set forth at length herein.

84.     At all times material hereto, DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE had a legal duty to use only that amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for proper and efficient arrest, supervision, and control of such persons.

85.     PLAINTIFFS posed no threat to DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE or others.

86.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE used undue violence against PLAINTIFFS without legal right to use any force against him, as there were no lawful grounds for arrest under the circumstances.

87.     By their actions, DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE deprived PLAINTIFFS of the clearly established right to be free from force, which was unreasonable and excessive under the circumstances, in violation of PLAINTIFFS rights under the Fourth Amendment to the United States Constitution.

88.     As a direct, proximate and foreseeable result of DEPUTY ARAGON-VELA and DEPUTY VANERWEIDE's actions, PLAINTIFFS have suffered bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, costs and expenses of litigation, and other injuries and losses.  These injuries and losses are permanent and continuing, and PLAINTIFFS will suffer such losses in the future.

89.     WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

a.      Judgement for compensatory damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE;

b.      Judgement for punitive damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE;

c.      Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

d.      Judgement for pre-judgment interest on all economic losses; and pre-judgment interest on attorney's fees for delay in payment;

e.      A trial by jury on all issues so triable; and

f.      Such other and further relief this Court may deem just, proper, and appropriate.

20

## COUNT V: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (PLAINTIFFS MALICIOUS PROSECUTION AGAINST DEFENDANTS DEPUTY ARAGON-VELA AND DEPUTY VANDERWEIDE, IN THEIR INDIVIDUAL CAPACITY)

90.     PLAINTIFFS repeat and re-allege each and every allegation set forth above in paragraphs "1" through "59" inclusive with the same force and effect as if more fully set forth at length herein.

91.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE commenced criminal proceedings against PLAINTIFFS.

92.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE caused the original proceeding against PLAINTIFFS by arresting PLAINTIFFS without probable cause contrary to the Fourth Amendment of the U.S. Constitution.

93.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE commenced criminal proceedings resulted in a bona fide termination in favor of the PLAINTIFFS.

94.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE lacked probable cause to arrest PLAINTIFFS.

95.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE knew they lacked probable cause for the arrest and continued to move forward with the PLAINTIFFS criminal proceedings.

96.     As a direct, proximate, and foreseeable result of DEPUTY ARAGON-

VELA and DEPUTY VANDERWEIDE actions, PLAINTIFFS suffered constitutional deprivations, bodily injuries, and resulting pain and suffering, mental anguish, loss of ability to enjoy life, loss of potential earning, public humiliation, and other injuries relating to this incident.  These injuries and losses are permanent and continuing, and PLAINTIFFS will suffer such losses in the future.

97.     WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

a.      Judgement for compensatory damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE;

b.      Judgement for punitive damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE;

c.      Judgment for the costs and expenses of this civil rights action;

d.      Judgement for pre-judgment interest on all economic losses; and pre-judgment interest on attorney's fees for delay in payment;

e.      A trial by jury on all issues so triable; and

f.      Such other and further relief this Court may deem just, proper, and appropriate.

## COUNT VI: STATE TORT CLAIM AGAINST ALL DEFENDANTS FOR ASSAULT

98.     PLAINTIFFS repeat and re-allege each and every allegation set forth above in paragraphs "1" through "59" inclusive with the same force and effect as if more fully set forth at length herein.

99.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE made an intentional, unlawful offer of corporal injury to PLAINTIFFS by force, or force unlawfully directed towards PLAINTIFFS' person.

100.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE actions created a fear of imminent peril; and

101.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE had the apparent present ability to effectuate the attempted action.

102.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE assaulted PLAINTIFFS, all in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property, when in fact, PLAINTIFFS had committed no crime, nor broken any law and said detention, arrest and imprisonment was without probable cause.

103.     Alternatively, DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE assaulted PLAINTIFFS during the scope of their employment with SCSD. DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE are employed by

SCSD and were acting in the course and scope of their employment when the battery happened.  As such, their employer, SHERIFF LEMMA, is responsible for their actions.

104.    As a direct, proximate, and foreseeable result of DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE's actions, PLAINTIFFS suffered bodily injuries, and resulting pain and suffering, mental anguish, loss of ability to enjoy life, loss of potential earning, public humiliation, and other injuries relating to this incident.  These injuries and losses are permanent and continuing, and PLAINTIFFS will suffer such losses in the future.

105.    WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their state law claim:

a.    Judgement for compensatory damages against DEFENDANTS;

b.    As it pertains to DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE acting in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, judgment for punitive damages.

c.    Judgment for the costs and expenses of this civil rights action;

d.    A trial by jury on all issues so triable; and

e.    Such other and further relief this Court may deem just, proper, and appropriate.

24

## COUNT VII: STATE TORT CLAIM AGAINST ALL DEFENDANTS FOR BATTERY

106.    PLAINTIFFS repeat and re-allege each and every allegation set forth above in paragraphs "1" through "59" inclusive with the same force and effect as if more fully set forth at length herein.

107.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE committed acts intending to cause harmful or offensive contact with PLAINTIFFS or causing PLAINTIFFS to be in imminent apprehension of such contact;

108.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE made offensive contact with PLAINTIFFS.

109.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE battered PLAINTIFFS, all in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property, when in fact, PLAINTIFFS had committed no crime, nor broken any law and said detention, arrest and imprisonment was without probable cause.

110.    Alternatively, DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE assaulted PLAINTIFFS during the scope of their employment with SCSD. DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE are employed by SCSD and were acting in the course and scope of their employment when the battery happened.  As such, their employer, SHERIFF LEMMA, is responsible for

their actions.

111.    As a direct, proximate, and foreseeable result of DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE's actions, PLAINTIFFS suffered bodily injuries, and resulting pain and suffering, mental anguish, loss of ability to enjoy life, loss of potential earning, public humiliation, and other injuries relating to this incident.  These injuries and losses are permanent and continuing, and PLAINTIFFS will suffer such losses in the future.

112.    WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their state law claim:

a.      Judgement for compensatory damages against DEFENDANTS;

b.      As it pertains to DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE acting in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, judgment for punitive damages.

c.      Judgment for the costs and expenses of this civil rights action;

d.      A trial by jury on all issues so triable; and

e.      Such other and further relief this Court may deem just, proper, and appropriate.

## COUNT VIII: STATE TORT CLAIM AGAINST ALL DEFENDANTS FOR FALSE ARREST AND IMPRISONMENT

113.    PLAINTIFFS repeat and re-allege each and every allegation set forth above in paragraphs "1" through "59" inclusive with the same force and effect as if more fully set forth at length herein.

114.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE intended to confine PLAINTIFFS.

115.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE performed an act resulting in PLAINTIFFS confinement.

116.    PLAINTIFFS were conscious of the confinement or resulting harm.

117.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE unreasonably and unlawfully detained and deprived PLAINTIFFS of their liberty, against their will and without legal authority or probable cause.

118.    PLAINTIFFS were cleared of all charges alleged against them arising from this incident, yet they still bear severe injuries inflicted by DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE.

119.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE falsely imprisoned PLAINTIFFS, all in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property, when in fact, PLAINTIFFS had committed no crime, nor broken any

law and said detention, arrest and imprisonment was without probable cause.

120.     Alternatively, DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE falsely imprisoned PLAINTIFFS during the scope of their employment with SCSD.  DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE are employed by SCSD and were acting in the course and scope of their employment when the battery happened.  As such, their employer, SHERIFF LEMMA, is responsible for their actions.

121.     As a direct, proximate, and foreseeable result of DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE's actions, PLAINTIFFS suffered bodily injuries, and resulting pain and suffering, mental anguish, loss of ability to enjoy life, loss of potential earning, public humiliation, and other injuries relating to this incident.  These injuries and losses are permanent and continuing, and PLAINTIFFS will suffer such losses in the future.

122.     WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their state law claim:

a.     Judgement for compensatory damages against DEFENDANTS;

b.     As it pertains to DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE acting in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, judgment for punitive damages.

c.      Judgment for the costs and expenses of this civil rights action;

d.      A trial by jury on all issues so triable; and

e.      Such other and further relief this Court may deem just, proper, and

appropriate.

## COUNT IX: STATE TORT CLAIM AGAINST DEPUTY ARAGON-VELA AND DEPUTY VANDERWEIDE FOR MALICIOUS PROSECUTION

123.    PLAINTIFFS repeat and re-allege each and every allegation set forth above

in paragraphs "1" through "59" inclusive with the same force and effect as if

more fully set forth at length herein.

124.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE commenced

criminal proceedings against PLAINTIFFS.

125.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE caused the

original proceeding against PLAINTIFFS by arresting PLAINTIFFS without

probable cause.

126.    PLAINTIFFS criminal proceedings resulted in a bona fide termination in

favor of the PLAINTIFFS.

127.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE lacked

probable cause to arrest PLAINTIFFS.

128.    DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE knew they

lacked probable cause for the arrest and continued to move forward with the

PLAINTIFFS criminal proceedings.

129.     DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE maliciously prosecuted PLAINTIFFS, all in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property, when in fact, PLAINTIFFS had committed no crime, nor broken any law and said detention, arrest and imprisonment was without probable cause.

130.     As a direct, proximate, and foreseeable result of DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE's actions, PLAINTIFFS suffered bodily injuries, and resulting pain and suffering, mental anguish, loss of ability to enjoy life, loss of potential earning, public humiliation, and other injuries relating to this incident.  These injuries and losses are permanent and continuing, and PLAINTIFFS will suffer such losses in the future.

131.     WHEREFORE, PLAINTIFFS pray that this Honorable Court grant the following relief on their state law claim:

a.     Judgement for compensatory damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE;

b.     Judgment for punitive damages against DEPUTY ARAGON-VELA and DEPUTY VANDERWEIDE.

c.     Judgment for the costs and expenses of this civil rights action;

d.     A trial by jury on all issues so triable; and

e.      Such other and further relief this Court may deem just, proper, and

appropriate.

## **<u>JURY DEMAND</u>**

PLAINTIFFS hereby demand a trial by jury as to Counts I through IX.

Respectfully submitted this 21st Day of January 2022.

/s/ Natalie A. Jackson
Natalie Jackson, Esq.
Fla. Bar No.: 646075
The Law Office of Natalie Jackson, P.A.
121 S. Orange Ave, Ste 1500
Orlando, FL 32801
(407) 437-9295 (Office)
(407) 386-8024 (Facsimile)
Natalie@nataliejacksonlaw.com